**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **LONNIE RUSSELL SHAW,**<br><br>  *Plaintiff,*<br><br>**v.**<br><br>**PEACH COUNTY,** a county government of the State of Georgia; **BRANDON WILLIAMS,** in his individual capacity as a Deputy of Peach County Sheriff's Department; **JAMES PERRY**, in his individual capacity as a Deputy of Peach County Sheriff's Department; **Sheriff TERRY W. DEESE**, individually and in his official capacity as Sheriff of the Peach County Sheriff's Department; and **Major KENNY CAMERON**, individually and in his official capacity as Deputy of the Peach County Sheriff's Department,<br><br>  *Defendants.* | **CIVIL ACTION NO.**<br>**5:21-cv-00145-TES** |

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS MULTIPLE CLAIMS

Before the Court is Defendants' Motion to Dismiss Multiple Claims in Plaintiff's

Amended Complaint [Doc. 20][1]. In their Motion, Defendants argue that the majority of

Plaintiff's claims are either barred by the applicable statute of limitations or insufficiently

---

[1] Defendants move to dismiss all claims in this action except for the federal malicious prosecution claim against Defendant Williams and the state law malicious prosecution claims against Defendants Williams, Sheriff Terry W. Deese, and Major Kenny M. Cameron.

pled. *See generally* [Doc. 20]. For the reasons discussed below, the Court **GRANTS** Defendant's Motion to Dismiss [Doc. 20].

## FACTUAL BACKGROUND

The following recitation of facts is taken from Plaintiff's Amended Complaint and a news article attached to Defendants' Motion to Dismiss.[2] Unless otherwise noted, the Court assumes these facts to be true for the purpose of ruling on the pending Motion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

On May 31, 2016, in the early hours of morning, Plaintiff's stepson, Nicholas Coker, arrived at Peach County Medical Center (the "Medical Center") with a gunshot wound to his left leg. [Doc. 19, ¶¶ 20–22]. A security guard at the Medical Center contacted 9-1-1 regarding the gunshot wound and requested law enforcement respond to the suspected shooting incident. [*Id.* at ¶ 25]. The 9-1-1 operator who answered the call asked the security guard for the location of the suspected shooting. [*Id.* at ¶ 27]. However, the security guard didn't know the location when he contacted emergency services and ended the call to gather the relevant details. [*Id.* at ¶ 28]. While the security

---

[2] "[A] court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsely v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)). Here, Defendants attached a news article to their dismissal motion that detailed the decision by Macon District Attorney David Cooke to not prosecute the Peach County deputy who shot Lonnie Shaw. [Doc. 20-2]. Plaintiff had the opportunity to challenge the contents of this new article in his Response [Doc. 21] to Defendants' Motion, but he failed to discuss the document at all. Therefore, for purposes of ruling on the present Motion, the news article is deemed to be central to Plaintiff's claim and its authenticity is undisputed.

guard went to collect such information, the 9-1-1 operator dispatched Peach County Sergeant Patrick Sondron to the Medical Center to investigate the suspected shooting. [*Id.* at ¶ 29]. Only a few moments passed before the security guard once again contacted 9-1-1 and provided the operator with the name and address on file for the patient with the gunshot wound, i.e., Nicholas Coker. [*Id.* at ¶ 30]. At no point during this call did the security guard inform the operator that the suspected shooting had occurred at Nicholas Coker's address on file—50 West Valley Drive, Fort Valley, Georgia. [*Id.* at ¶¶ 31–32]. But, when the operator dispatched officers to respond to the incident, she told them that the shooting had occurred at 50 West Valley Drive, which, unfortunately for Plaintiff, was also where he lived with his wife. [*Id.* at ¶ 34]. Peach County Deputies Brandon Williams and James Perry (respectively, "Defendant Williams", and "Defendant Perry") responded to the dispatch and arrived in separate vehicles at Plaintiff's residence around 3 a.m. [*Id.* at ¶¶ 35–36].

Upon their arrival, Defendants Williams and Perry unfastened a locked gate in front of the residence and proceeded onto the property, all the while ignoring several posted "No Trespassing" signs. [*Id.* at ¶¶ 37–38]. Plaintiff and his wife, Dawn Shaw, were asleep inside the residence. [*Id.* at ¶ 39]. Somehow, Dawn Shaw became alerted to the presence of others on the property, and she awoke her husband to inform him about possible trespassers. [*Id.* at ¶ 40]. In response, Plaintiff retrieved his handgun and went to the front door of his residence to investigate. [*Id.* at ¶¶ 41–42]. Plaintiff partially

opened the door, all the while keeping his handgun pointed down beside his right leg. [*Id.* at ¶ 42]. Defendant Williams shined a flashlight on Plaintiff's body and asked, "Hey, what's up? What happened?" [*Id.* at ¶ 44]. Without waiting for a response, and while Plaintiff's gun was still positioned at his side, Defendant Williams pulled out his gun and shot Plaintiff in the chest. [*Id.* at ¶ 45]. He was rushed to the Medical Center of Central Georgia for treatment and nearly died from his injuries. [*Id.* at ¶ 48].

Meanwhile, Investigator James Sutton, an on-call investigator for the Peach County Sheriff's Office, arrived at Plaintiff's residence in response to the suspected shooting of Nicolas Coker. [*Id.* at ¶¶ 69–70]. While at the scene, Investigator Sutton spoke with Defendant Williams about the events surrounding his shooting of Plaintiff. [*Id.* at ¶ 71]. Defendant Williams lied to Investigator Sutton when he reported that either he or Defendant Perry had asked Plaintiff what was in his hand, and instead of responding, Plaintiff immediately raised his hand and pointed a gun at him. [*Id.* at ¶¶ 73–75]. While recounting this version of events, Defendant Williams also falsely demonstrated the stance that Plaintiff took when he first answered the door. [*Id.* at ¶ 72].

Subsequent to this brief investigation, the Georgia Bureau of Investigation (the "GBI") questioned Defendant Williams about the shooting. [*Id.* at ¶¶ 62–63]. Defendant Williams similarly lied to the GBI agent and said that he asked Plaintiff what was in his hand prior to firing his weapon. [*Id.* at ¶ 63]. However, Defendant Williams added that

Plaintiff "made a spin move" as if to gain a better advantage to fire shots at him and Defendant Perry. [*Id.*]. Then, Defendant Williams said that Plaintiff had apparently raised his hand and pointed a gun at him. [*Id.* at ¶ 64].

Defendant Williams' lies and false statements led Macon Judicial Circuit District Attorney David Cooke to indict and prosecute Plaintiff in the Peach County Superior Court case, *State v. Lonnie Shaw*, No. 18-CR-264, on the following charges: (1) aggravated assault on a law enforcement officer in violation of O.C.G.A. § 16-5-21(d) and (2) possession of a firearm during the commission of a felony in violation of O.C.G.A. § 16-11-106. [*Id.* at ¶¶ 67–68]. However, during Plaintiff's criminal trial, Defendant Williams took the stand and admitted that he provided false information to Investigator Sutton and the GBI about the circumstances surrounding the firing of his weapon. [*Id.* at ¶¶ 76–77]. Furthermore, video evidence presented at trial showed that Plaintiff never raised or pointed a gun at Defendant Wiliams during their encounter. [*Id.* at ¶ 66]. Not surprisingly, the jury acquitted Plaintiff of all charges on April 26, 2019. [*Id.* at ¶ 124].

Exactly two years later, Plaintiff filed this suit alleging various federal and state law violations related to his shooting and subsequent prosecution. *See generally* [Doc. 1]. Upon review of Plaintiff's original Complaint [Doc. 1], the Court concluded that it was an impermissible shotgun pleading and ordered Plaintiff to recast his original Complaint to cure those deficiencies as outlined in its Order [Doc. 18]. In response, Plaintiff filed an Amended Complaint [Doc. 19], which is now the controlling pleading

in this action. In his Amended Complaint, Plaintiff asserts § 1983 claims against Defendants Williams and Perry for unreasonable search and seizure, the use of unreasonable and excessive force, and malicious prosecution. [*Id.* at ¶ 83, 87]. Relatedly, he brings state law claims for trespass, assault, battery, false arrest, false imprisonment, intentional infliction of emotional distress, negligence, and malicious prosecution against Defendants Williams and Perry. [*Id.* at ¶¶ 102–116, 117, 134]. As to Defendants Peach County, Sheriff Terry W. Deese ("Deese"), and Major Kenny M. Cameron ("Cameron"), Plaintiff asserts § 1983 claims against them based on *Monell*[3] liability and supervisory liability for their alleged failure to adequately hire, train, supervise, and discipline their employees and agents. [*Id.* at ¶¶ 92–101]. He brings state law claims for malicious prosecution and negligence against these Defendants as well. [*Id.* at ¶¶ 134–137].

Based upon the factual allegations contained in Plaintiff's Amended Complaint, Defendants moved to dismiss most of the claims brought against them, alleging that they are either barred by the applicable statute of limitations or insufficiently pled. [Doc. 20-1].

---

[3] "*Monell v. Department of Social Services* holds that a municipality can be sued for damages under 42 U.S.C. § 1983 (1982) when 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' or is 'visited pursuant to governmental custom even though such custom has not received formal approval through the body's official decision making channels.'" *Gilmere v. City of Atlanta*, 737 F.2d 894, 901 (11th Cir. 1984) (quoting *Monell v. Department of Services*, 436 U.S. 658, 690–91 (1978), *rev'g in part Monroe v. Pape*, 365 U.S. 167 (1961)).

## DISCUSSION

### A.      Legal Standard

When ruling on a 12(b)(6) motion, district courts must accept the facts set forth in the complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). A complaint survives a motion to dismiss only if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). In fact, a well-pled complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (citations omitted).

Although Federal Rule of Civil Procedure 8 does not require detailed factual allegations, it does require "more than [ ] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *McCullough*, 907 F.3d at 1333 (citation omitted). To decide whether a complaint survives a motion to dismiss, district courts are instructed to use a two-step framework. *Id.* The first step is to identify the allegations that are "no more than mere conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* (citation omitted). After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Furthermore, a complaint attacked by a 12(b)(6) motion is subject to dismissal when it fails to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. "A plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333 (internal quotations omitted); *see also Twombly*, 550 U.S. at 555. "To be sure, a plaintiff may use legal conclusions to structure his complaint, but legal conclusions 'must be supported by factual allegations.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must take all of the factual allegations in the complaint as true; they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

The issue to be decided when considering a motion to dismiss is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 545, 555. Finally, complaints that tender "'naked assertion[s]' devoid of 'further factual enhancement'" will

not survive against a motion to dismiss.  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Stated differently, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556. With the foregoing standard in mind, and taking the facts asserted in Plaintiff's Amended Complaint as true, the Court rules on Defendants' Motion to Dismiss.

## B.    Defendants' Motion to Dismiss

Defendants contend that the federal and state law claims asserted against them (save for the federal malicious prosecution claim against Defendant Williams and the state law malicious prosecution claims against Defendants Williams, Deese, and Cameron) should be dismissed because they are insufficiently pled and/or barred by the applicable statute of limitations[4] or sovereign immunity. *See generally* [Doc. 20-1]. In response, Plaintiff argues that the statute of limitations has not run on any of his federal or state law claims, and he cured any insufficiently pled claims in his Amended Complaint. *See generally* [Doc. 21]. Accordingly, the Court considers the merits of such arguments below.

---

[4] "[A] statute of limitations defense may be raised on a motion to dismiss for failure to state a claim for which relief can be granted under Fed. R. Civ. P. 12(b)(6)[.]" *AVCO Corp. v. Precision Air Parts, Inc.*, 676 F.2d 494, 495 (11th Cir. 1982); *Edward J. Goodman Life Income Tr. v. Jabil Circuit, Inc.*, 595 F. Supp. 2d 1253, 1280 (M.D. Fla. 2009), *aff'd* 594 F.3d 783 (11th Cir. 2010).

1.    <u>All of Plaintiff's § 1983 Claims and State Law Claims (Except His Malicious Prosecution Claims) are Time-Barred.</u>

Defendants argue that Plaintiff's § 1983 claims for unreasonable search and seizure and excessive force against Defendants Williams and Perry, and any corresponding § 1983 supervisory liability claims against Defendants Peach County, Deese, and Cameron are barred by Georgia's two-year statute of limitations for personal injury claims. They argue that the statute of limitations on these claims began to run on the date that Plaintiff was shot and arrested—May 31, 2016. Accordingly, by the time that Plaintiff actually filed suit for these claims nearly five years later—April 26, 2021—the applicable statute of limitations had already run, thereby barring any potential recovery.

As an initial matter, § 1983 does not have its own statute of limitations. *Reynolds v. Murray*, 170 F. App'x 49, 50 (11th Cir. 2006) (citing *Owens v. Okure*, 488 U.S. 235, 236 (1989)). Rather, claims for constitutional violations brought under this statute are regarded as "tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." *Crowe v. Donald*, 528 F.3d 1290, 1292 (11th Cir. 2008) (quoting *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008)). In Georgia, there is a two-year statute of limitations for personal injury actions, as set forth in O.C.G.A. § 9-3-33. *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003); *see also Williams v. City of Atlanta*, 794 F.2d 624, 626 (11th Cir. 1986) (holding that "the proper

limitations period for all section 1983 claims in Georgia is the two year period set forth in O.C.G.A. § 9-3-33 for personal injuries[]").

Although the Court applies Georgia's two-year statute of limitations, "[t]he question of when the limitations period begins to run, however, is one of federal law." *Wright v. Walmart Inc.*, No. 1:19-cv-02580-SDG, 2020 WL 4938367, at *4 (N.D. Ga. Apr. 1, 2020) (quoting *Brown v. Lewis*, 361 F. App'x 51, 54 (11th Cir. 2010)). Accordingly, the two-year statute of limitations for Plaintiff's constitutional claims begins to run "when the facts that would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Porter v. Ray*, 461 F.3d 1315, 1323 (11th Cir. 2006) (citing *Lovett*, 327 F.3d at 1182). "It is well established that a federal claim accrues when the prospective plaintiff knows or has reason to know of the injury which is the basis of the action." *Mcnair v. Allen*, 515 F.3d 1168, 1174 (11th Cir. 2008) (quoting *Corn v. City of Lauderdale Lakes*, 904 F.2d 585, 588 (11th Cir. 1990)).

In this action, Plaintiff knew or had reason to know of his injuries on May 31, 2016—the date on which he was shot and arrested. Pursuant to Georgia's two-year statute of limitations, his personal-injury claims should have been filed no later than May 31, 2018. However, Plaintiff did not file *any* claims arising from this incident until April 26, 2021—nearly five years after the fact. Therefore, Plaintiff's § 1983 claims for unreasonable search and seizure and excessive force are time-barred, unless there is

some basis for the statute of limitations to be tolled. Plaintiff argues O.C.G.A. § 9-3-99 serves as that basis.

In Georgia, pursuant to O.C.G.A. § 9-3-99, the statute of limitations in a civil action may be tolled for actions brought by victims of a crime. "[T]he statute contemplates extending the time in which a victim may file a tort action where there are pending criminal charges arising out of the same facts or circumstances." *Williams v. Durden*, 819 S.E.2d 524, 525 (Ga. Ct. App. 2018) (citation omitted). O.C.G.A. § 9-3-99 states in relevant part:

> The running of the period of limitations with respect to any cause of action in tort that may be brought by the victim of an alleged crime which arises out of the facts and circumstances relating to the commission of such alleged crime committed in this state shall be tolled from the date of the commission of the alleged crime or the act giving rise to such action in tort until the prosecution of such crime or act has become final or otherwise terminated, provided that such time does not exceed six years . . .

O.C.G.A. § 9-3-99. First, the statute is very clear that tolling only applies to those tort actions brought *by the victim of an alleged crime.* In this action, Plaintiff claims to be the victim of an unlawful prosecution for aggravated assault in the Peach County criminal action, *State v. Lonnie Shaw*, No. 18-CR-264 (2018). [Doc. 19, ¶ 4]. But, under Georgia law, unlawful prosecution *is not a crime*. Rather, in Georgia, an unlawful prosecution is a *civil* cause of action grounded in tort law principles. *See* O.C.G.A. § 51-7-40. While Plaintiff may have pled sufficient facts to show that he is the victim of a *tort*, he has failed to show that he is the victim of a *crime* by being wrongfully prosecuted. Simply

put, any allegedly wrongful prosecution doesn't toll the applicable statute of limitations under Georgia law.

However, the analysis doesn't end here. Upon a liberal reading of the factual allegations set forth in Plaintiff's Amended Complaint, the Court concludes that Plaintiff plausibly alleges that he is the victim of a crime because Defendant Williams unlawfully shot him. In fact, Plaintiff's § 1983 claims for excessive force and unreasonable search and seizure, and his § 1983 supervisory liability claims against Defendants Peach County, Deese, and Cameron all arise from Defendant Williams intentionally shooting Plaintiff (allegedly, without justification) on the morning of May 31, 2016. [Doc. 19, ¶ 4]; *see also* [Doc. 21, pp. 4–8].  And, this allegation is sufficient to constitute a crime in the state of Georgia. *See e.g., Yawn v. State*, 515 S.E.2d 182, 183 (Ga. Ct. App. 1999) ("The act of intentionally firing a gun at another person, in the absence of justification, is sufficient to support a conviction for aggravated assault under O.C.G.A. § 16-5-21(a)(2).").

Therefore, the Court concludes that Plaintiff has alleged sufficient facts to show that he is the victim of an alleged crime, such as aggravated assault, trespass, battery, or even attempted murder. And, he has filed suit for a cause of action in tort which arises out of the facts and circumstances relating to the commission of the crime. On that basis, the Court concludes that O.C.G.A. § 9-3-99 applies to toll the statute of limitations on Plaintiff's personal injury claims.

However, just because O.C.G.A. § 9-3-99 applies to toll the statute doesn't mean that Plaintiff's personal injury claims related to these crimes survive. Rather, O.C.G.A. § 9-3-99 only tolls Plaintiff's claims "from the date of the alleged crime or the act giving rise to such action in tort *until the prosecution of such crime or act has become final or otherwise terminated*, provided that such time does not exceed six years." Plaintiff apparently takes the position that "any" prosecution related to the unlawful shooting had not become final or otherwise terminated as of the date he filed this action, and therefore, his claims have been tolled since May 31, 2016—the date of the unlawful shooting and arrest.

Again, Plaintiff never suggests, much less directly alleges, that there is an ongoing prosecution or even pending criminal charges against Defendant Williams as to his liability in the aforementioned incident. Instead, Plaintiff argues that O.C.G.A. § 9-3-99 tolls his claims because there is a pending criminal investigation (which constitutes a prosecution under the statute) into whether Defendant Williams was justified in shooting Plaintiff. Specifically, he contends that the GBI *opened* an investigation into the shooting but failed to issue a written, conclusive determination as to whether it was justified, and therefore, because the GBI never *closed* its investigation into the matter, it has remained pending for the last five years.

As to this argument, district courts, when interpreting the scope of O.C.G.A. § 9-3-99, have held that the statute tolls a victim's tort causes of action during the pendency

14

of an investigation into an alleged crime, regardless of whether such an investigation results in the filing of criminal charges. *See Benjamin v. Thomas*, No. 1:16-cv-1632-WSD, 2016 WL 5394118, at *6 (N.D. Ga. Sept. 27, 2016); *Winston v. Walsh*, No. 5:19-cv-00070-TES, 2019 WL 3068451, at *5 (M.D. Ga. July 12, 2019). The basis for tolling claims under the statute during the pendency of a *criminal* investigation is to allow victims of a crime the opportunity to obtain evidence and/or general information relevant to their *civil* claims, which might otherwise have been privileged or unobtainable during the pendency of the *criminal* investigation. *See e.g., Benjamin*, 2016 WL 5394118 at *6 (noting a crime victim's efforts to obtain relevant documents and video footage were unsuccessful during the pendency of a criminal investigation into the crime because the government claimed privilege from disclosure). Therefore, the Court readily agrees that any actual pending investigation into the wrongful shooting would toll the limitations period for Plaintiff's § 1983 claims. However, the relevant question in this action, is when (if ever) did tolling end.

As this Court has noted before, "[b]y its plain language, tolling under Section 9-3-99 ends when any [investigation] based on the facts underlying the civil action 'become[s] final or otherwise terminated.'" *Winston*, 2019 WL 3068451 at *6. It is clear that "in cases where charges are dismissed, the defendant has entered a guilty plea, or the defendant's trial has been completed, the prosecution is final[]" and tolling has ended. *Id.* Likewise, in a case where the state files a *nolle prosequi*, or where a district

attorney publicly announces the decision not to prosecute or pursue charges against an individual, the prosecution is final against that individual. *Id.*

In this action, Defendants argue that any investigation into/prosecution of Defendant Williams was final on September 26, 2016—the date that Macon Judicial Circuit District Attorney David Cooke announced that he would be pursing criminal charges against Plaintiff and not Defendant Williams. [Doc. 20-1, p. 8]; [Doc. 20-2]. And, if that argument isn't compelling, Defendants contend that a criminal investigation could not possibly remain pending at this point in time (as Plaintiff argues is the case) because the statute of limitation on any crime that Defendant Williams could have been charged with regarding the wrongful shooting has expired. [Doc. 20-1, p. 8].

Based upon the arguments presented, and a review of the applicable caselaw on the matter, the Court concludes that any criminal prosecution against Defendant Williams definitively ended when District Attorney David Cooke decided to pursue criminal charges and obtain an indictment against Plaintiff for the following offenses arising from the wrongful shooting at issue in this action: (1) aggravated assault on a peace officer in violation of O.C.G.A. § 16-5-21(d); and (2) possession of a firearm during the commission of a felony in violation of O.C.G.A. § 16-11-106. [Doc. 19-1]; *see also* [Doc. 19-5]. Choosing to indict Plaintiff for his alleged wrongful actions necessarily meant choosing not to indict Defendant Williams or investigate any suspected wrongfulness on his part.

At the time this incident arose, the District Attorney faced a binary decision. The facts, as presented to him, showed that there was an altercation between an officer and civilian that resulted in the officer discharging his weapon and shooting the civilian. Based on these facts, the District Attorney needed to make a determination on whether the shooting was justified—and thereby, lawful— or not justified—and thereby, not lawful. By pursuing charges against Plaintiff, the District Attorney effectively made the decision that the shooting was justified; he necessarily and logically concluded that Plaintiff was the one who acted unlawfully, not Defendant Williams. After the District Attorney decided to seek an indictment against Plaintiff, there is nothing to suggest that any law enforcement agency actually investigated Defendant Williams. Rather, Plaintiff's argument that because the GBI never actually closed its investigation, its investigation into the shooting (against Defendant Williams) must be ongoing and thus not "otherwise terminated," is just legally and logically unsupportable. After the District Attorney decided to seek an indictment against Plaintiff, any and all investigations into the events on that night were "otherwise terminated" as was the tolling of the statute of limitations for any civil claims. Plaintiff received the benefit of the tolling statute during the pendency of the investigation—118 days. Thus, he should have filed his suit on or before September 25, 2018, long before he actually did so.

Regardless, if it was not clear that any criminal investigation terminated on September 26, 2016, it was certainly clear that it had been "otherwise terminated" when

the statutes of limitations for any potential criminal charges against Defendant Williams expired. If the District Attorney planned to prosecute Defendant Williams for his alleged wrongful shooting (or any other applicable crime), he would have needed to pursue those criminal charges by May 31, 2020, because the statute of limitations for any possible criminal charge arising from his suspected liability in this incident is four years. *See e.g.,* O.C.G.A. § 17-3-1(b) (prosecution for felonies such as aggravated assault, aggravated battery, and attempted murder must be brought within four years from the date of the commission of the crime). Defendant Williams can no longer legally be prosecuted for his wrongful shooting; therefore, it doesn't follow that a criminal investigation into this incident could logically remain pending when there is no longer *the potential* for it to result in criminal charges against Defendant Williams.

The Georgia Court of Appeals has clearly held that when "the time for any prosecution has come and gone, and [when] there never was any pending prosecution nor could there be in the future" the statute of limitations on a civil claim is not tolled under O.C.G.A. § 9-3-33 because any pending prosecution had effectively terminated at that point. *Jenkins v. Keown*, 830 S.E.2d 498, 502 (Ga. Ct. App. 2019) (noting that because the statute of limitations had expired on any potential criminal charges against the defendant, it was apparent that any criminal investigation into his alleged wrongful acts had ended).

Plaintiff offers nothing in his Amended Complaint to suggest that Defendant Williams ever faced a pending prosecution at any point in time since the date of the unlawful shooting. And, it is clear that he can now never face criminal charges for shooting Plaintiff. Instead, the Court concludes that any prosecution (for purposes of tolling) ended on the date that the Peach County District Attorney concluded that he would seek an indictment against Plaintiff for aggravated assault on a peace officer—September 26, 2016. When the District Attorney made that decision, any potential or pending investigation into whether Defendant Williams committed a crime against Plaintiff was "otherwise terminated" so that any tolling period ended then.

To sum it up, the statute of limitations period set forth in O.C.G.A. § 9-3-33 applies to all of Plaintiff's § 1983 claims and any state law claims, except for trespass.[5] And, considering the applicable tolling statute, O.C.G.A. § 9-3-99, the Court finds that the two-year limitations period was tolled for 118 days, or until September 25, 2018. However, Plaintiff filed this action on April 26, 2021. Therefore, any and all claims, either those based on § 1983 or state law, that arose before September 25, 2016 are barred by the applicable statute of limitations. Therefore, the Court **DISMISSES** Plaintiff's § 1983 excessive force and unreasonable search and seizure claims against

---

[5] Plaintiff's trespass claim is subject to a four-year statute of limitation. *Stroud v. Hall Cnty.*, 793 S.E.2d 104, 111 (Ga. Ct. App. 2016) (citing O.C.G.A. § 9-3-30(a)). After applying the tolling period of 118 days, Plaintiff had until September 25, 2020 to file any claim for trespass. Because he filed this suit on April 26, 2021, this claim is time barred as well.

Defendants Williams and Perry; his § 1983 supervisory liability claims against

Defendants Peach County, Deese, and Cameron, as well as his state law claims of

negligence, trespass, assault, battery, false arrest, false imprisonment, and intentional

infliction of emotional distress.

> 2.   Plaintiff's Federal and State Law Claims for Malicious Prosecution
>        Against Defendant Perry Fail to State a Claim.

Defendant Perry moves to dismiss the § 1983 and state law malicious prosecution

claims against him for failure to state a claim. In turn, Plaintiff offered no defense for his

claims.[6] To state a claim for malicious prosecution under § 1983, a plaintiff must allege:

(1) the elements of the common law tort of malicious prosecution and (2) a violation of

the Fourth Amendment right to be free from unreasonable search and seizure. *Grider v.*

*City of Auburn*, 618 F.3d 1240, 1256 (11th Cir. 2010). The elements of the common law

tort of malicious prosecution are (1) a criminal prosecution initiated or continued by the

present defendant (2) with malice and without probable cause (3) that terminated in the

plaintiff's favor and (4) caused damages to the plaintiff. *Wood v. Kessler*, 323 F.3d 872,

882 (11th Cir. 2003) (citing *Uboh v. Reno*, 141 F.3d 1000, 1004 (2003)).

The Court has reviewed the factual allegations in Plaintiff's Amended Complaint

and must conclude that Plaintiff does not sufficiently plead the requisite elements to

---

[6] Defendant Perry argues that Plaintiff effectively abandoned his state and federal law claims for malicious prosecution against him when he failed to respond to the argument presented in the dismissal motion. *See* [Doc. 22, p. 6 (citing *Hudson v. Norfolk & Southern Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001)]. However, the Court will nonetheless consider the merits of Plaintiff's claim.

state a claim for malicious prosecution against Defendant Perry under federal or state law.

As to the first element of the common law tort of malicious prosecution, Plaintiff fails to allege how Defendant Perry initiated a criminal prosecution against him. Rather, Plaintiff only alleges that Defendant Williams—not Defendant Perry—made the false accusations and statements against him that led to his criminal prosecution. *See e.g.*, [Doc. 19, ¶ 118 ("On or about May 31, 2016, Defendant Williams, maliciously, and without probable cause therefor, caused the Plaintiff to be charged with Aggravated Assault on a Peace Officer.")]; [Doc. 19, ¶ 122 ("As a result of Defendant Williams' false accusations, Plaintiff was re-indicted and criminally prosecuted in the case of *State v. Lonnie Shaw*, Indictment Number 18-CR-264, filed on August 09, 2018[.]").]. Plaintiff alleges no act by Defendant Perry that could plausibly be construed to constitute his initiation of a criminal action against Plaintiff. Therefore, since Plaintiff cannot satisfy the first element of a common law tort claim for malicious prosecution, the Court concludes that he has failed to state either a federal or state law claim for malicious prosecution against Defendant Perry.

## CONCLUSION

For the reasons discussed in detail above, the Court **GRANTS** Defendants'

Motion to Dismiss Multiple Claims in Plaintiff's Amended Complaint [Doc. 20].[7] The only claims remaining in this action are the federal and state law claims for malicious prosecution against Defendant Williams and the state law claims for malicious prosecution against Defendants Deese and Cameron. Defendants Perry and Peach County are terminated from this action.

**SO ORDERED**, this 15th day of September, 2021.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[7] The Court also **DENIES** Defendants' Motion to Stay Discovery [Doc. 24] as **moot**. Defendants moved for a stay pending resolution of their dismissal motion. [Doc. 24]. This Order does exactly that. Therefore, Defendants' interest in moving for a stay is now moot.